**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sonja Schroeder, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Megan J. Brennan,<br><br>Defendant. | No. CV-17-01301-PHX-JJT<br><br>**ORDER** |

At issue is Defendant Megan J. Brennan's Motion for Summary Judgment on Plaintiff Sonja Schroeder's Claims for Disparate Treatment and Retaliation (Doc. 72, "MSJ"), to which Plaintiff Sonja Schroeder filed a Response (Doc. 81, "Resp."), and Defendant filed a Reply (Doc. 86, "Reply"). The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court finds that Plaintiff has shown that genuine issues of material fact exist, and Defendant is not entitled to summary judgment.

**I.  BACKGROUND**

Plaintiff was hired by the United States Postal Service ("USPS") as a Rural Carrier Associate ("carrier") at the Peoria Main Post Office (the "Peoria post office") in 2013. During the relevant time period, Plaintiff's direct supervisor was Lynn McLuty. Isaac Rudd served as the Acting Postmaster for the Peoria post office from January 2015 until

November 2015, Albert Zavala served as the Acting Postmaster in December 2015 and January 2016, and Mr. Rudd returned as the Acting Postmaster until July 2016.

### A. Supervisor Lynn McLuty's Treatment of Female Employees

Female carriers who worked under the supervision of Mr. McLuty at the Peoria post office testified that Mr. McLuty frequently used offensive and intimidating words and behavior towards them. Linda Miano testified that Mr. McLuty was abusive towards female carriers. (Doc. 82, Ex. 7, Deposition of Linda Miano (Miano Dep.) at 37:25–38:2.) She said that Mr. McLuty singled out female carriers for criticism—at times reducing them to tears—and "routinely called women 'bitches.'" (Miano Dep. at 38:12–38:20; 61:19–61:24.) On the other hand, Ms. Miano said that Mr. McLuty "wouldn't harass the guys" and "wrote up very little discipline for male carriers." (Miano Dep. at 63:11; 112:12–112:13.) Alegria Arment testified that Mr. McLuty called female carriers "crybabies[,]" "pussy[,]" and "spoiled bitches." (Doc. 82, Ex. 9, Deposition of Amber Alegria (Alegria Dep.) at 15:15–15:20.) She said that she never witnessed Mr. McLuty "invade [male carriers'] personal space[] as he would the women [or] call a male carrier by any other name than what their name was[.]" (Alegria Dep. at 16:7–16:12.)

Barbara Feno, a rural carrier who had worked for USPS for 18 years, testified that Mr. McLuty "tormented [her] life for so long[.]" (Doc. 82, Ex. 10, Deposition of Barbara Jean Feno (Feno Dep.) at 16:9–16:10.) Ms. Feno said that Mr. McLuty used words that were gender specific and offensive, including "bitch" and "the F word." (Feno Dep. at 24:15-25:3.) She testified that Mr. McLuty previously had to leave a different post office "because of the way he treated women." (Feno Dep. at 33:7-33:8.) She described Mr. McLuty as a "bully" who would "get right in [the] face" of women. (Feno Dep. at 38:16-38:25.) Ms. Feno said that if "you were a man, [Mr. McLuty] wasn't going to mess with you[,] but he targeted "[w]eak women mostly[.]" (Feno Dep. at 43:13-43:17.) In addition, Ms. Feno said that Mr. Zavala and Mr. McLuty were "like two peas in a pod," except that Mr. Zavala knew "how to control himself better" than Mr. McLuty did. (Feno Dep. at 39:15-39:16.)

### B. Plaintiff's Informal Hostile Work Environment Complaint to the USPS Human Resources Department (December 2015)

On December 17, 2015, Plaintiff made an informal complaint to USPS of a hostile work environment—though the complaint was not about Mr. McLuty's conduct described above. Acting Postmaster Mr. Zavala interviewed Plaintiff, Mr. McLuty, and two witnesses and completed a USPS hostile work environment packet. (Doc. 73-2, Ex. 2-A, Hostile Work Environment Packet at 47–62.) Plaintiff provided a statement alleging that she and Mr. McLuty had a verbal altercation that day and that Mr. McLuty pulled her "cage," causing an injury—a scratch—on her left side. Plaintiff also alleged that Mr. McLuty called her a "pussy." (Doc. 73, Ex. 5, Deposition of Sonja Schroeder (Schroeder Dep.) at 53:10–26:11.) Mr. Zavala immediately sent the Hostile Work Environment packet and interview notes to the Phoenix District Office's Human Resources ("HR") department. Mr. Zavala never received a response from HR. When Mr. Rudd returned as Acting Postmaster, no one informed him about the incident or Plaintiff's informal complaint. Later, HR had no record of the informal complaint.

### C. Plaintiff's Backpack Incident and 14-Day Suspension (March 2016)

Mr. McLuty stated that in March 2016, his managers told him that he needed to start enforcing a USPS rule which prohibited employees from having large personal items on the workroom floor. (Doc. 73, Ex. 1, Declaration of Lynn McLuty (McLuty Decl.) ¶ 18.) Mr. McLuty said he had previously told the carriers that they could not keep personal items larger than a shoe box on the workroom floor but could keep larger items in their vehicles or their lockers in the employee locker room. (McLuty Decl. ¶ 16.) On March 22, 2016, Mr. McLuty told Plaintiff to remove her backpack from the workroom floor. (McLuty Decl. ¶ 19.) Plaintiff went to Acting Postmaster Mr. Zavala, who confirmed that the instruction was coming from him. (McLuty Decl. ¶ 19; Ex. 1-E; Ex. 1-F.) Plaintiff took her backpack to her car and returned with a smaller bag. (McLuty Decl. ¶ 19; Ex. 1-E; Ex. 1-F.)

On March 25, 2016, Plaintiff again had her backpack in the workroom and was reprimanded by Mr. McLuty. The parties disagree about exactly what occurred. According

to Plaintiff, she was outside on a break when her coworker came to tell her that Mr. McLuty had kicked Plaintiff's backpack, causing its contents to fall out. (Schroeder Dep. at 26:3–26:7.) Plaintiff said that she immediately went inside and found her personal belongings laying on the workroom floor. (Schroeder Dep. at 26:18–26:21.) She picked up her belongings and put them away. (Schroeder Dep. at 26:23–26:24, 27:1.) Then, she relayed the incident to Acting Postmaster Mr. Zavala, who allegedly told her that if she "didn't want to be bothered by Lynn McLuty, [she] needed to carry a clear plastic purse or see-through bag." (Schroeder Dep. at 28:11–28:18.) Plaintiff alleges that Mr. McLuty was present for the conversation and that he agreed with the clear bag instruction. (Schroeder Dep. at 30:5–30:15.)

According to Defendant, Mr. McLuty told Plaintiff to remove her backpack from the workroom floor, but Plaintiff claimed that her backpack was not a personal item because it contained work materials. (McLuty Decl. ¶ 19, 22; Ex. 1-F.) Defendant alleges that Plaintiff then went to Mr. Zavala and told him she needed to keep her medicine at her work station. (Doc. 73, Ex. 2, Declaration of Albert Zavala (Zavala Decl.) ¶ 12.) Mr. Zavala told Plaintiff that she could keep her medicine at her work station in a clear bag. (Zavala Decl. ¶ 12.) Later that day, Plaintiff took photographs of purses she said she found in her coworkers' work stations. (Doc. 73, Ex. 6, Schroeder Letter.)

Mr. McLuty prepared a proposed personnel action for Plaintiff recommending a 14-day suspension for her failure to follow the instruction not to keep her backpack at her work station and for taking photographs in the workroom.[1] (Doc. 73, Ex. 1-F, Proposed Personnel Action.) On April 6, 2016, Mr. McLuty issued a notice of 14-day paper suspension for Plaintiff's "failure to follow [her] supervisor's instructions." (Doc. 73, Ex. 1-G, Notice of 14-Day Suspension.) The notice explained that although a paper suspension does not require an employee to serve time-off, "it has the equivalent degree of seriousness as if [the employee] had served time-off without pay." (Notice of 14-Day

---

[1] USPS employees are prohibited from taking photographs in the workroom. (Zavala Decl. ¶ 21.)

- 4 -

Suspension.) The notice also stated that a 14-day suspension "is more serious than a Letter of Warning and seven (7) day paper suspension" and that "[f]uture deficiencies will normally result in [the employee's] removal from the Postal Service." (Notice of 14-Day Suspension.)

**D. Plaintiff's Formal Complaint to the USPS's Equal Employment Opportunity Office (July 2016)**

Plaintiff filed a formal complaint with USPS's Equal Employment Opportunity office (USPS EEO office) on July 8, 2016.[2] In her formal EEO complaint, Plaintiff alleged that her manager, Mr. Zavala, and her supervisor, Mr. McLuty, took discriminatory actions against her based on "sex" and "retaliation." (Doc. 9 Ex. 1-A at 1.) Plaintiff discussed two specific incidents. She alleged that on December 17, 2015, she "was physically injured by supervisor McLuty at work" and that her "Hostile Work Environment complaint" about the incident "was never acted upon or investigated by USPS[.]" (Doc. 9 Ex. 1-A at 1.) And she alleged that on March 25, 2016, she "was singled out for scrutiny which included being prohibited from use of [her] backpack, required to use clear plastic bag for person[al] possessions and treated as [an] untrustworthy employee without cause." (Doc. 9 Ex. 1-A at 1.)

On August 3, 2016, the USPS EEO office sent Plaintiff a letter entitled "Partial Acceptance/Partial Dismissal of Formal EEO Complaint." (Doc. 9 Ex. 1-B at 1–6.) The USPS EEO office recognized three alleged instances of discrimination: (1) the March 25, 2016 incident where management "singled out" Plaintiff by requiring her to use a clear bag for personal possessions; (2) management's failure to advise Plaintiff of the results of her December 17, 2015 informal complaint; and (3) Plaintiff's April 6, 2016 Notice of 14-Day Suspension for Failure to Follow Supervisor's Instructions. (Doc. 9 Ex. 1-B at 2.) The USPS EEO office accepted the second and third alleged instances of discrimination but

---

[2] The Court will continue to differentiate between the three "complaints" in this matter in the following way: using "informal complaint" to refer to Plaintiff's December 17, 2015 informal internal complaint; "the formal EEO complaint" to refer to Plaintiff's July 8, 2016 USPS EEO formal complaint; and the "Complaint" to refer to the Complaint filed in this Court to institute the instant matter. (*See* Doc. 21.)

- 5 -

dismissed the March 25, 2016 incident where Plaintiff was required to use a clear bag for personal possessions. (Doc. 9 Ex. 1-B at 2–3.) The letter stated that Plaintiff had seven days to notify them if she disagreed with their definition of the accepted issues. (Doc. 9 Ex. 1-B at 3.) Plaintiff did not provide a response.

On February 2, 2017, the USPS EEO office issued its "Final Agency Decision" in which it determined that the evidence did not support a finding of discrimination for Plaintiff's second and third alleged instances of discrimination. (Doc. 9 Ex. 1-C (Final Agency Decision) at 18–35.) Regarding the second instance, where Defendant allegedly failed to advise Plaintiff of the results of her informal hostile work environment complaint, the USPS EEO office found that: Plaintiff met her burden of proving a *prima facie* case of discrimination on the basis of sex; Defendant articulated a legitimate non-discriminatory reason for its conduct; but Plaintiff failed to show that Defendant's legitimate reason was pretext for discrimination. (Final Agency Decision at 29, 32–33.) Regarding the third instance, Plaintiff's 14-day paper suspension, the USPS found that Plaintiff failed to show that she was treated less favorably than similarly situated individuals who were not female. (Final Agency Decision at 27.)

The formal EEO complaint is the prerequisite for bringing a later action under Title VII in the District Court. A complainant may file a civil action in United States District Court within 90 calendar days of the USPS EEO office's final agency decision. (Final Agency Decision at 34–35.)

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary

judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

### III. ANALYSIS

In Count One of her Complaint, Plaintiff alleged that Defendant's actions constituted employment discrimination under Title VII based on gender and a hostile work environment. (Doc. 1, Compl. ¶¶ 19–21.) In its December 4, 2017 and January 12, 2018 Orders, the Court dismissed Plaintiff's discrimination claim based on a hostile work environment for failure to exhaust the claim with the USPS EEO office. (*See* Docs. 21, 26.) Plaintiff's discrimination claim based on gender survived. (*See* Doc. 26.) In Count Two, Plaintiff alleged that Defendant engaged in workplace retaliation in violation of Title VII. (Compl. ¶¶ 22–24.)

## A. Plaintiff's Employment Discrimination Claim on the Basis of Sex

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 § U.S.C. 2000e-2(a)(1). "[A]n unlawful employment practice is established when the complaining party demonstrates that . . . sex . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 § U.S.C. 2000e-2(m)

A plaintiff may present either direct or circumstantial evidence to prove her employment discrimination case. Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2006). If the plaintiff fails to produce direct evidence, the Court may evaluate circumstantial evidence using the burden-shifting framework that the Supreme Court established in *McDonnell Douglas Corp. v. Green*. 433 U.S. 792, 802–805 (1973). Under that framework, first, the plaintiff must establish a *prima facie* case of unlawful discrimination by showing that (1) she belongs to a protected class, (2) she was qualified for the position she held, (3) she was subjected to an adverse employment action, and (4) similarly situated individuals outside her protected class were treated more favorably. *Id*. at 802. The burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id*. Finally, the burden shifts back to the plaintiff to show that the defendant's proffered reason was pretext. *Id*. at 804.

As a preliminary matter, the Court notes that the parties disagree about which facts Plaintiff may use to prove her sex discrimination claim.[3] Defendant asserts that only the facts regarding Defendant's failure to investigate Plaintiff's informal hostile work environment claim, the backpack incident, and Plaintiff's 14-day paper suspension are

---

[3] In this Order, the Court will refer to Plaintiff's Title VII employment discrimination claim on the basis of "gender" as the "sex discrimination claim."

admissible. (Reply at 5–6.) Plaintiff, on the other hand, focuses exclusively on evidence of how Mr. McLuty treated female carriers in general and contends that it is direct evidence of discrimination based on sex. (Resp at 6.)

The Court finds that while evidence of Mr. McLuty's general treatment of female carriers may be used, it is not direct because it requires the fact-finder to draw inferences regarding the three incidences. The evidence does not directly show why HR failed to investigate Plaintiff's claim. Nor does it directly prove that Mr. McLuty was motivated by discriminatory animus when he told Plaintiff to remove her backpack from the workroom floor or issued the 14-day paper suspension. But reasonable a fact-finder could draw inferences from the evidence of Mr. McLuty's behavior towards female carriers when determining what motivated him to enforce the backpack rule against Plaintiff and subsequently issue her 14-day paper suspension. Therefore, it is circumstantial evidence that is relevant to her sex discrimination claim. Since Plaintiff's evidence is circumstantial, the Court will analyze it under the *McDonnell Douglas* framework.

        **1.**     **Plaintiff Can Establish a *Prima Facie* Case of Unlawful Discrimination**

Under the *McDonnell Douglas* framework, "[t]he requisite degree of proof necessary to establish a prima facie case for Title VII ... on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Chuang v. Univ. of Cal. Davis, Bd. Of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000) (citation omitted). The parties do not dispute the fact that Plaintiff was part of a protected class based on her sex or that she was qualified for the position she held. Defendant instead argues that Plaintiff has not shown that she was subjected to an adverse employment action or that similarly situated individuals outside her protected class were treated more favorably.

        **a.**     **Adverse Employment Action**

An adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008); *Chuang*, 225 F.3d at 1126. Plaintiff does not address the adverse

employment action issue in her Response. The Court, in construing the evidence in a light most favorable to her, will consider whether any of the three incidents—Defendant's failure to investigate Plaintiff's informal hostile work environment claim, the backpack incident, or Plaintiff's 14-day paper suspension—could qualify as an adverse employment action.

The most obvious incident that a fact-finder could find to be an adverse employment action is the 14-day paper suspension. Although Plaintiff was not actually required to take the time off, the paper suspension was intended to carry the weight of a real suspension, and it resulted in Plaintiff being eligible for termination if she had any "[f]uture deficiencies." A reasonable fact-finder could decide that the 14-day paper suspension materially affected Plaintiff's terms and privileges of employment by making her eligible for termination if she were to commit one more rule violation.[4] Thus, in viewing the evidence in a light most favorable to Plaintiff, the non-moving party, she has met her burden for establishing that a genuine issue of material fact exists as to whether she meets the "adverse employment action" prong of the *McDonnell Douglas* test. 433 U.S. at 802; *Celotex*, 477 U.S. at 323.

### b. Similarly Situated Employees

Individuals are similarly situated when "they have similar jobs and display similar conduct." *Vasquez*, 349 F.3d at 641. Defendant asserts that Plaintiff "has not identified any similarly situated individuals outside of her protected class who were treated more favorably." (MSJ at 6.) Plaintiff contends that "there is substantial evidence that male rural letter carrier[s] were not subjected to the conduct, treatment or hostility that Lynn McLuty as the Peoria Main letter carrier supervisor imposed on the female segment of the workforce." (Resp. at 5.)

---

[4] Having found that a reasonable fact-finder could find the 14-day paper suspension could be an adverse employment action, the Court need not decide whether the backpack incident or Defendant's failure to investigate Plaintiff's informal hostile work environment claim could be adverse employment actions.

- 10 -

In *Vasquez*, the Ninth Circuit found that the plaintiff was not similarly situated to his co-worker because the co-worker "did not engage in problematic conduct of comparable seriousness to that of" the plaintiff, who had disobeyed a direct order from his supervisor. *Id*. at 641–42. Here, Plaintiff has presented evidence that other carriers engaged in similar conduct by bringing their personal bags into the workroom. For example, Plaintiff's coworker Amber Alegria testified that many rural carriers at the Peoria post office—male and female—kept backpacks or bags at their work stations. (Alegria Dep. at 54:3–54:14.) Daniel Walker, Plaintiff's coworker and boyfriend at the time, testified that he "had never seen anybody with a clear bag or being told where or if they [could] even keep a bag at their workstation." (Doc. 79, Ex. 3, Deposition Excerpts of Daniel Walker (Walker Dep.) at 46:19–46:21.) As far as Mr. Walker knew, "everyone" kept a bag at their workstations. (Walker Dep. at 46:21–46:22.)

To be sure, the evidence that other female carriers were not disciplined for the same behavior undercuts Plaintiff's claim. Nevertheless, the evidence creates a dispute of material fact about whether Mr. McLuty treated similarly situated employees outside of the protected class—male carriers who kept personal bags in the workroom—more favorably. Because Plaintiff has provided evidence to create a genuine issue of material fact as to whether she suffered an adverse employment action or whether similarly situated employees were treated more favorably, she meets her burden at this stage of establishing a *prima facie* claim of sex discrimination. *McDonnell Douglas*, 433 U.S. at 802–05; *Celotex*, 477 U.S. at 323.

    **2.**    **Defendant Has Articulated a Legitimate, Non-Discriminatory Reason for the Adverse Employment Action**

The burden then shifts to Defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 433 U.S. at 802. Defendant has met its burden by showing that USPS had an agency-wide rule against employees keeping large personal items on the workroom floor, Plaintiff broke that

rule twice in March, and Mr. McLuty said he gave Plaintiff the 14-day paper suspension because she violated the rule. (MSJ at 6–7.)

### 3. Plaintiff Has Shown that Defendant's Reason Could Be Pretext

An employee can prove pretext either: (1) "directly, by showing that unlawful discrimination more likely motivated the employer"; or (2) "indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 849 (9th Cir. 2004) (internal quotation marks omitted) (quoting *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002)). "[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons." *Chuang*, 225 F.3d at 1127.

Plaintiff contends that Defendant had "no legitimate explanation" for the differential treatment. (Resp. at 5.) She points to "evidence that male [carriers] were not subjected to the conduct, treatment or hostility that [Mr. McLuty] imposed on the female [carriers]." (Resp. at 5.) The Court construes Plaintiff's argument as stating that pretext can be shown "indirectly, by showing that [Mr. McLuty's] proffered explanation" for enforcing the backpack rule against Plaintiff and then imposing the 14-day paper suspension "is unworthy of credence." *Id*. Given the evidence of Mr. McLuty's derogatory comments and intimidating behavior towards female carriers at the Peoria post office—presented as part of Plaintiff's *prima facie* claim—Plaintiff has properly raised a genuine issue of material fact regarding the truth of Mr. McLuty's proffered explanation. *Chuang*, 225 F.3d at 1127. A reasonable fact-finder could find that sex was a "motivating factor" in Mr. McLuty's decision-making. 42 U.S.C. 2000e-2(m). Therefore, Plaintiff has met her burden of proof for showing pretext at the summary judgment stage. Plaintiff's has presented evidence that creates a genuine issue of material fact as to whether Defendant discriminated against her because of her sex. 42 § U.S.C. 2000e-2(a)(1). Thus, summary judgment is not appropriate for Plaintiff's sex discrimination claim. *Celotex*, 477 U.S. at 323.

### B. Plaintiff's Retaliation Claim

Title VII also makes it an unlawful employment practice for an employer to retaliate against an employee because she has opposed any practice made unlawful by Title VII or because she has made a charge, testified, assisted, or participated in any manner in an investigation under Title VII. 42 U.S.C. § 2000e–3(a).

#### 1. Plaintiff Can Establish a *Prima Facie* Case of Unlawful Discrimination

The *McDonnell Douglas* burden-shifting framework may be applied to Title VII retaliation claims. *See Ruggles v. California Polytechnic State Univ.*, 797 F.2d 782, 784 (9th Cir. 1986.) A plaintiff may establish a *prima facie* case of retaliation by showing that (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). The parties do not disagree that Plaintiff engaged in protected activity when she made her informal complaint to HR. Defendant instead argues that none of its actions qualify as adverse, and that even if they did, Plaintiff cannot establish causation. (MSJ at 9–12.)

##### a. Adverse Employment Action

For a retaliation claim, a plaintiff must show that the alleged adverse employment actions were "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The Ninth Circuit construes adverse employment action broadly and has found that a "wide array of disadvantageous changes in the workplace constitute adverse employment actions." *Ray*, 217 F.3d at 1240.

Defendant argues that the 14-day paper suspension "had no actual consequences attached to it" and therefore was not an adverse employment action. (MSJ at 11.) But, as explained above, the suspension did come with consequences—it brought Plaintiff one step closer to being eligible for termination. A fact-finder could decide that a reasonable employee would be deterred from engaging in protected activity if it resulted in a 14-day

paper suspension and the exposure to being terminated for a subsequent rule violation. *See, e.g., Burlington*, 548 U.S. at 73 ("A reasonable employee facing the choice between retaining her job (and paycheck) and filing a discrimination complaint might well choose the former." *Id.* at 73.). Thus, a question of material fact remains as to whether Plaintiff suffered an adverse employment action. *Burlington*, 548 U.S. at 68.

### 2. Causation

In *University of Texas Southwestern Medical Center v. Nassar*, the Supreme Court decided that a plaintiff has a heightened standard for proving causation in retaliation claims—she must show that her engagement in a protected activity was a "but-for" cause of the defendant's imposition of an adverse employment action. 570 U.S. 338, 362 (2013). Plaintiff asserts that she was punished for challenging Mr. McLuty's treatment of female employees. (Resp. at 8.) Defendant argues that Plaintiff cannot prove that her engagement in a protected activity—filing an informal complaint to HR in December 2015—was a "but-for" cause of Defendant's actions during the backpack incident or Defendant's decision to issue the 14-day paper suspension. (MSJ at 10–12.) According to Defendant, Mr. McLuty was merely enforcing a rule that applied to all employees, and Plaintiff was issued a suspension because she was the only one who repeatedly violated the rule. (MSJ at 10.)

In viewing the evidence most favorably to Plaintiff, a jury could find that Mr. McLuty singled her out for having her backpack in the workroom—and imposed the 14-day paper suspension—to retaliate against her for filing the informal complaint to HR. Plaintiff has met her burden of proof for showing her *prima facie* case of retaliation. *Ray*, 217 F.3d at 1240.

### 3. Defendant Has Articulated a Legitimate, Non-Discriminatory Reason for the Adverse Employment Action, and Plaintiff Has Shown that Defendant's Reason Could Be Pretext

Defendant has articulated a legitimate reason for the 14-day paper suspension—Plaintiff's violation of the large personal items rule. (MSJ at 10–12.) Plaintiff has presented

evidence that she was singled out for violating this rule and that Defendant's true motive was to retaliate against her for submitting the informal complaint to HR. (Resp. at 8.) Therefore, genuine issues of material fact remain, and summary judgment is not appropriate for Plaintiff's retaliation claim.

**IT IS THEREFORE ORDERED** denying Defendant Megan J. Brennan's Motion for Summary Judgment (Doc. 72).

Dated this 6th day of September, 2019.

Honorable John J. Tuchi
United States District Judge