# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sonja Schroeder, *et al.*, | No. CV-17-01301-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Megan J. Brennan, | |
| Defendant. | |

At issue is Defendant Megan J. Brennan's Motion for Summary Judgment on Plaintiff Daniel Walker's Claim for Retaliation (Doc. 74, "MSJ"), to which Plaintiff Daniel Walker filed a Response (Doc. 78, "Resp."), and Defendant filed a Reply (Doc. 87, "Reply"). The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court finds that Plaintiff has shown that genuine issues of material fact exist as to his substantive retaliation claim, and Defendant is not entitled to summary judgment on that claim. However, Plaintiff has presented no evidence to create a genuine issue of material fact regarding equitable relief. Therefore, summary judgment is appropriate on the issue of equitable relief for Plaintiff's retaliation claim.

## I.   BACKGROUND

Plaintiff was hired by the United States Postal Service ("USPS") as a Rural Carrier Associate ("carrier") at the Peoria Main Post Office (the "Peoria post office") in January

2016. In March 2016, Plaintiff was dating his co-worker Sonja Schroeder, who was also a carrier at the Peoria post office. Both were supervised by Lynn McLuty.

### A. Supervisor Lynn McLuty's Treatment of Female Employees

Female carriers who worked under the supervision of Mr. McLuty at the Peoria post office testified that Mr. McLuty frequently used offensive and intimidating words and behavior towards them. Linda Miano testified that Mr. McLuty was abusive towards female carriers. (Doc. 82, Ex. 7, Deposition of Linda Miano (Miano Dep.) at 37:25–38:2.) She said that Mr. McLuty singled out female carriers for criticism—at times reducing them to tears—and "routinely called women bitches." (Miano Dep. at 38:12–38:20; 61:19–61:24.) On the other hand, Ms. Miano said that Mr. McLuty "wouldn't harass the guys" and "wrote up very little discipline for male carriers." (Miano Dep. at 63:11; 112:12–112:13.) Alegria Arment testified that Mr. McLuty called female carriers "crybabies[,]" "pussy[,]" and "spoiled bitches." (Doc. 82, Ex. 9, Deposition of Amber Alegria (Alegria Dep.) at 15:15–15:20.) She said that she never witnessed Mr. McLuty "invade [male carriers'] personal space[] as he would the women [or] call a male carrier by any other name than what their name was[.]" (Alegria Dep. at 16:7–16:12.)

Barbara Feno, a rural carrier who had worked for USPS for 18 years, testified that Mr. McLuty "tormented [her] life for so long[.]" (Doc. 82, Ex. 10, Deposition of Barbara Jean Feno (Feno Dep.) at 16:9–16:10.) Ms. Feno said that Mr. McLuty used words that were gender specific and offensive, including "bitch" and "the F word." (Feno Dep. at 24:15-25:3.) She testified that Mr. McLuty previously had to leave a different post office "because of the way he treated women." (Feno Dep. at 33:7-33:8.) She described Mr. McLuty as a "bully" who would "get right in [the] face" of women. (Feno Dep. at 38:16-38:25.) Ms. Feno said that if "you were a man, [Mr. McLuty] wasn't going to mess with you[,] but he targeted "[w]eak women mostly[.]" (Feno Dep. at 43:13-43:17.) In addition, Ms. Feno said that Mr. Zavala, the Acting Postmaster at the time, and Mr. McLuty were "like two peas in a pod," except that Mr. Zavala knew "how to control himself better" than Mr. McLuty did. (Feno Dep. at 39:15-39:16.)

### B. Sonja Schroeder's Informal Hostile Work Environment Complaint

On December 17, 2015, Ms. Schroeder made an informal complaint to USPS of a hostile work environment. Mr. Zavala interviewed Ms. Schroeder, Mr. McLuty, and two witnesses and completed a USPS hostile work environment packet. (Doc. 73, Ex. 2-A, Hostile Work Environment Packet at 47–62.) Ms. Schroeder provided a statement alleging that she and Mr. McLuty had a verbal altercation that day and that Mr. McLuty pulled her "cage," causing an injury—a scratch—on her left side. Ms. Schroeder also alleged that Mr. McLuty directed her to leave the premises. Mr. Zavala immediately sent the Hostile Work Environment packet and interview notes to the Phoenix District Office's Human Resources ("HR") department but never received a response.

### C. Management's Enforcement of "Large Bag" Rule against Sonja Schroeder

Mr. McLuty stated that in March 2016, his managers told him that he needed to start enforcing a USPS rule that prohibited employees from having large personal items on the workroom floor. (Doc. 73, Ex. 1, Declaration of Lynn McLuty (McLuty Decl.) ¶ 18.) On March 22, 2016, Mr. McLuty told Ms. Schroeder to remove her backpack from the workroom floor. (McLuty Decl. ¶ 19.) Ms. Schroeder went to Mr. Zavala, who confirmed that the instruction was coming from him. (McLuty Decl. ¶ 19; Ex. 1-E; Ex. 1-F.) Ms. Schroeder took her backpack to her car and returned with a smaller bag. (McLuty Decl. ¶ 19; Ex. 1-E; Ex. 1-F.)

On March 25, 2016, Ms. Schroeder again had her backpack in the workroom and was reprimanded by Mr. McLuty. The parties disagree about exactly what occurred. According to Ms. Schroeder, she was outside on a break when her coworker came to tell her that Mr. McLuty had kicked her backpack, causing its contents to fall out. (Doc. 73, Ex. 5, Deposition of Sonja Schroeder (Schroeder Dep.) at 26:3–26:7.) Ms. Schroeder said she relayed the incident to Mr. Zavala, who allegedly told her that if she "didn't want to be bothered by Lynn McLuty, [she] needed to carry a clear plastic purse or see-through bag." (Schroeder Dep. at 28:11–28:18.) According to Defendant, Ms. Schroeder claimed that her

backpack was not a personal item because it contained work materials. (McLuty Decl. ¶ 19, 22; Ex. 1-F.) Defendant alleges that Ms. Schroeder then went to Mr. Zavala and told him she needed to keep her medicine at her work station. (Doc. 73, Ex. 2, Declaration of Albert Zavala (Zavala Decl.) ¶ 12.) Mr. Zavala told Ms. Schroeder that she could keep her medicine at her work station in a clear bag. (Zavala Decl. ¶ 12.) Plaintiff reports that Ms. Schroeder approached him crying and told him that a member of management had dumped her purse out onto the floor.

### D. Termination of Plaintiff

Shortly thereafter, Mr. Zavala and Plaintiff had a conversation—the details of which are disputed. Plaintiff had just walked Ms. Schroeder out of the building. (Doc. 79, Ex. 3, Deposition Excerpts of Daniel Walker (Walker Dep.) at 40:14–40:18.) According to Plaintiff, Mr. Zavala approached him "in good spirits and just kind of said, hey, what's up." (Walker Dep. at 40:11–40:24.) In response, Plaintiff asked Mr. Zavala "why Sonja [Schroeder] was being treated so much differently than everybody else." (Walker Dep. at 34:15–34:21.) Mr. Zavala told Plaintiff that he could not talk to Plaintiff about another employee. (Walker Dep. at 42:9–42:10.) Then Plaintiff asked him a second question in a "friendly" way about why Ms. Schroeder was crying. (Walker Dep. at 43:6–43:10.) Plaintiff said that his demeanor was "respectful" and that he never raised his voice. (Walker Dep. at 43:11–43:15.) Mr. Zavala asked Plaintiff to follow him into his office and had the City Manager, Greg Valenzuela, come too. (Walker Dep. at 42:10–42:12; 43:16–43:22.) Mr. Zavala asked Plaintiff to repeat what he had said in front of Mr. Valenzuela. (Walker Dep. at 43:14–43:15.) After Plaintiff repeated himself, Mr. Zavala "looked over to Mr. Valenzuela and told him that [Plaintiff] obviously doesn't care about his job and [has] to go." (Walker Dep. at 49:16–49:18.) Mr. Zavala asked Plaintiff for his badge, and he and Mr. Valenzuela escorted Plaintiff off the property. (Walker Dep. at 50:4–50:16.) Plaintiff knew he was being terminated. (Walker Dep. at 54:1–54:2.)

In Mr. Zavala's version of events, he passed Plaintiff in the hallway and "said hello or asked him how things were going[.]" (Doc. 75-2, Ex. 1, Declaration of Albert Zavala

(Zavala Decl.) ¶ 12.) Plaintiff started walking towards him and asked why he had yelled at Ms. Schroeder. (Zavala Decl. ¶ 13.) Mr. Zavala knew that Plaintiff and Ms. Schroeder "were dating." (Zavala Decl. ¶ 13.) Mr. Zavala told Plaintiff that his "conversation with Ms. Schroeder was not his business[] and instructed him to head out on his route." (Zavala Decl. ¶ 14.) Plaintiff was "upset and tense," and he asked twice more why Mr. Zavala had yelled at Ms. Schroeder. (Zavala Decl. ¶ 14.) Mr. Zavala then instructed Plaintiff to go the Postmaster's office, where he advised Plaintiff "that he was a probationary employee, that his conduct was inappropriate, and that he had to carry out a supervisor's instructions, even if he disagreed with them." (Zavala Decl. ¶¶ 14–15.) After Plaintiff asked again why Mr. Zavala had yelled at Ms. Schroeder, Mr. Zavala terminated him for bad conduct. (Zavala Decl. ¶ 15.)

Defendant now moves for summary judgment on Plaintiff's Title VII retaliation claim and a portion of Plaintiff's damages.

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence

tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

## III.   ANALYSIS

In Count II of his Complaint, Plaintiff alleged that Defendant engaged in workplace retaliation in violation of Title VII. (Doc. 1, Compl. ¶¶ 22–24.) Title VII makes it an unlawful employment practice for an employer to retaliate against an employee because he has opposed any practice made unlawful by Title VII. 42 U.S.C. § 2000e–3(a). A plaintiff may establish a *prima facie* case of retaliation by showing that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Finally, the burden shifts back to the plaintiff to show that the defendant's proffered reason was pretext for a discriminatory motive. *Id.*

### A.   Plaintiff Has Established a *Prima Facie* Case of Unlawful Discrimination

Under the *McDonnell Douglas* framework, "[t]he requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Chuang v. Univ. of Cal. Davis, Bd. Of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000) (citation omitted). The parties do not dispute the fact that Plaintiff was subjected to an adverse

employment action when he was terminated. Defendant instead argues that Plaintiff did not engage in a protected activity, and that even if he did, causation cannot be established. (MSJ at 4–7.)

### 1. Protected Activity

Plaintiff contends that the evidence "clearly establishes that he was terminated for questioning the treatment of Ms. Schroeder in a manner that was distinct (differential) and retaliatory." (Resp. at 7.) Defendant asserts that "asking why another employee is being treated 'differently' is not sufficient to have engaged in protected conduct" and that "[n]othing in the record supports Plaintiff's assertion that he complained that Ms. Schroeder was being discriminated against for her gender." (Reply at 5–6.)

A plaintiff in a retaliation claim must show that he engaged in a statutorily protected activity, such as opposing unlawful employment discrimination directed against employees protected by Title VII. *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994). "Courts have not imposed a rigorous requirement of specificity in determining whether an act constitutes 'opposition[.]'" *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983). "[A]n employee's complaints about the treatment of others is considered a protected activity, even if the employee is not a member of the class that he claims suffered from discrimination, and even if the discrimination he complained about was not legally cognizable." *Ray v. Henderson*, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000). "When an employee reasonably believes that discrimination exists, opposition thereto is opposition to an employment practice made unlawful by Title VII even if the employee turns out to be mistaken as to the facts." *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978). "[A] person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion[.]" *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tennessee*, 555 U.S. 271, 277 (2009). "Making an informal complaint to a supervisor is . . . a protected activity." *Ray*, 217 F.3d at 1240 n.3.

The question of whether Plaintiff has demonstrated that he engaged in protected expression is a close call. Plaintiff reasonably believed that Ms. Schroeder was being

treated "differently," but he did not verbalize what he believed to be the cause of her differential treatment—whether it was her gender or something else. When asked during his deposition to clarify what he meant by "differently," Plaintiff said he was referring to the backpack incident of that day. (Walker Dep. at 37:8–37:12.) He also said he believed that Ms. Schroeder was "under attack constantly by management." (Walker Dep. at 36:6–35:9.) That evidence does not clarify whether Mr. Walker's opposition was based on a reasonable belief of the existence of sex discrimination. *Sias*, 588 F.2d at 695.

Plaintiff also argues that he is protected by his status "as what Albert Zavala and Greg Valenzuela refer to . . . as Ms. Schroeder's 'fiancé.'" (Resp. at 7.) In *Thompson v. North American Stainless, LP*, the petitioner and his fiancé were both employees of the respondent. 562 U.S. 170, 172 (2011). The respondent fired the petitioner three weeks after learning that his fiancé had filed a charge to the Equal Employment Opportunity Commission alleging sex discrimination. *Id*. The Supreme Court decided that the firing of the petitioner constituted unlawful retaliation because "a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired." *Id*. In declining to identify a fixed class of relationships for which third-party reprisals are unlawful, the Supreme Court noted that "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id*. at 175 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006)). Plaintiff's Response mischaracterizes the relationship status between himself and Ms. Schroeder. In his deposition, Plaintiff described Ms. Schroeder as his "significant other at the time" and said they were "a couple" but not engaged. (Walker Dep. at 35:1–35:10.) Nevertheless, their relationship status is still relevant because the Supreme Court did not delineate a fixed class of relationships for which third-party retaliation claims are unlawful. *Thompson*, 562 U.S. at 175.

Taken together, the evidence of Plaintiff's informal comments to Mr. Zavala and his relationship status as Ms. Schroeder's significant other is sufficient for a reasonable fact-finder to determine that his termination was retaliatory. *Thompson*, 562 U.S. at 175; *Ray*, 217 F.3d at 1240 n.3. In viewing the evidence most favorably to Plaintiff,

Ms. Schroeder filed an informal hostile work complaint and was subsequently discriminated against by Peoria post office management. When Plaintiff—who Mr. Zavala knew was dating Ms. Schroeder—voiced his opposition to the way management treated her, he was promptly terminated. Plaintiff has established that genuine issues of material fact exist as to the "protected activity" prong for his *prima facie* case of retaliation.

### 2. Causation

In *University of Texas Southwestern Medical Center v. Nassar*, the Supreme Court decided that a plaintiff has a heightened standard for proving causation in retaliation claims—he must show that his engagement in a protected activity was a "but-for" cause of the defendant's imposition of an adverse employment action. 570 U.S. 338, 362 (2013). Defendant argues that Plaintiff's statements to Mr. Zavala were not the but-for cause of his termination. (MSJ at 6.) Instead, "Plaintiff's approach to the matter, including his failure to follow Mr. Zavala's instruction to get back to work, was the cause of his termination." (MSJ at 6–7.) Plaintiff argues that causation can be established by timing alone because "when adverse employment decisions are taken within a short period of time after protected conduct has occurred[,] retaliatory intent is inferred." (Resp. at 9.)

"Causation . . . may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F. 2d 1371, 1376 (9th Cir. 1997). An "inference of a causal link is strengthened by the closeness in time between particular events." *Id*. Plaintiff has produced evidence that his statements to Mr. Zavala—his alleged protected activity—were uttered minutes before he was terminated. Based on the temporal proximity between Plaintiff's statements to Mr. Zavala and his termination, Plaintiff has created a genuine factual issue as to whether his engagement in protected activity was the but-for cause of his termination.

. . . .

. . . .

. . . .

### B. Defendant Has Articulated a Legitimate, Non-Discriminatory Reason for the Adverse Employment Action

Once the plaintiff has established a *prima facie* case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, nonretaliatory explanation for its decisions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id*. at 254–55.

Defendant has articulated two reasons for its termination of Plaintiff—Plaintiff's overall poor job performance and Plaintiff's "insubordinate and disruptive" conduct towards Mr. Zavala on March 25. (MSJ at 8–9.) As a new USPS carrier, Plaintiff was required to complete a probationary period lasting either 90 working days or 365 calendar days, whichever occurred first. (Doc. 75, Ex. 2, Declaration of Lynn E. McLuty (McLuty Decl.) ¶ 6.) Mr. McLuty, Plaintiff's supervisor, was responsible for evaluating his job performance at 30, 60, and 80 days. (McLuty Decl. ¶¶ 12, 16.) According to Mr. McLuty, around the time that Plaintiff's 60-day probationary evaluation was to occur, he told Mr. Zavala that he was "not likely to recommend that [Plaintiff] be retained unless he demonstrated significant improvement in performance and conduct." (McLuty Decl. ¶¶ 25–26.) Since "poor job performance" constitutes "a legitimate, nondiscriminatory reason for terminating" an employee, Defendant has at least met its burden of production. *Aragon v. Repub. Silver State Disposal, Inc.*, 292 F.3d 654, 661 (9th Cir. 2002).

### C. Plaintiff Has Shown that Defendant's Reason Could Be Pretext

Finally, the burden of production shifts back to the plaintiff "to demonstrate that the proffered reason was not the true reason for the employment decision." *Burdine*, 450 U.S. at 256. The plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*. A plaintiff "can survive summary judgment without producing any evidence of discrimination beyond that

constituting his *prima facie* case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons." *Chuang v. Univ. of Cal. Davis, Bd. Of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000). Plaintiff's evidence—that he was terminated immediately after confronting Mr. Zavala about management's treatment of his significant other, Ms. Schroeder—shows that Defendant's proffered explanation may be unworthy of credence. *Burdine*, 450 U.S. at 256. Thus, material questions of fact remain for Plaintiff's retaliation claim, and Defendant is not entitled to summary judgment on Plaintiff's claim.

### D. Damages

Defendant also asserts that summary judgment is appropriate on Plaintiff's demand for "actual damages" because Plaintiff has provided no evidence to quantify or substantiate his demand. (MSJ at 9.) Plaintiff responds that "the recovery of back pay" is "a task reserved to the trial court for computation." (Resp. at 10.)

There are three types of relief available for successful Title VII plaintiffs—equitable relief, compensatory damages, and punitive damages. *See Gotthardt v. National R. R. Passenger Corp.*, 191 F.3d 1148, 1153–54 (1999). Originally, plaintiffs were limited to equitable relief under Title VII section 706(g), which allowed a court to "enjoin the respondent from engaging in [the] unlawful employment practice" and "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay[], or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1). In 1991, Congress passed 42 U.S.C. § 1981(a), which authorized compensatory and punitive damages for Title VII claims. *See Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999). Compensatory damages were defined as "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses[.]" 42 U.S.C. § 1981a(b)(3). Compensatory damages exclude "backpay, interest on backpay, or any other type of relief authorized under section 706(g)[.]" 42 U.S.C. § 1981a(b)(2).

The Court first must determine which category of damages—equitable or compensatory—the parties are referring to when they use the term "actual damages."[1] The Court interprets Defendant's use of the term "actual damages" as referring to equitable relief because Defendant argues that Plaintiff did not provide evidence of his "lost wages, back pay, or front pay[.]" (MSJ at 11.) Indeed, that is how Plaintiff seems to interpret the argument. Plaintiff contends that USPS is "well aware" of the amount Plaintiff would have earned if he had not been terminated and of Plaintiff's "limited employment" since his termination. (Resp. at 10.)

Plaintiff is obligated to produce evidence under Rule 56 demonstrating a genuine issue of material fact to avoid summary judgment on equitable relief. *See Anderson*, 477 U.S. at 256–57; *Santos v. TWC Admin. LLC*, 2014 WL 12558274, at *7 (C.D. Cal. Nov. 3, 2014) ("[T]o survive summary judgment, [the plaintiff] must come forward with evidence raising triable issues concerning the fact that she suffered damage.") Because Plaintiff has presented no genuine dispute of material fact regarding backpay or any other equitable relief requested under section 706(g) in response to Defendant's motion, summary judgment is appropriate on his request for equitable relief only.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendant's Motion for Summary Judgment (Doc. 74). Defendant is not entitled to summary judgment on Plaintiff's Title VII retaliation claim but is entitled to summary judgment on Plaintiff's request for equitable damages.

**IT IS FURTHER ORDERED** that the Court will set a pretrial status conference by separate order.

Dated this 10th day of September, 2019.

Honorable John J. Tuchi
United States District Judge

---

[1] Plaintiff has not requested punitive damages, which are not available in Title VII claims against government entities. *See* 42 U.S.C. § 1981a(b)(1).